**Robert Leslie BUSCHE, Plaintiff,**

v.

**Robert L. BOSMAN and Wallace E. Burkee, Defendants.**

**Civ. A. No. 76–C–559.**

United States District Court, E. D. Wisconsin.

Aug. 15, 1979.

Walter W. Stern, III, and Myron P. Keyes, Kenosha, Wis., for plaintiff.

James W. Conway, Kenosha City Atty., Kenosha, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action brought pursuant to 42 U.S.C. §§ 1983 and 1985 for damages and injunctive relief arising out of the plaintiff's allegedly unlawful initial termination from employment with the Kenosha Police Department and, following his reinstatement, his subsequent sixty-day suspension without pay. Trial to the court was held on June 5, 6, and 25, 1979. On June 6, 1979, the Court granted the plaintiff's motion to dismiss the action against the defendant Joseph H. Trotta. On June 25, 1979, the action was dismissed by stipulation against the defendants Bernice Nagy, Jack Rice, Fred Hopf, Gregg Vigansky, Bernard Dunlap, and Jerold W. Breitenbach. Thus, there remain as defendants in the action Robert L. Bosman, formerly the Chief of Police in Kenosha, Wisconsin, and Wallace E. Burkee, formerly the Mayor of Kenosha, Wisconsin.

Plaintiff alleges that his rights to due process arising under the Fourteenth Amendment to the United States Constitution were violated by the manner of his initial termination from employment on August 12, 1974, by the conduct of the subsequent Police and Fire Commission ("Commission") investigation of the charges against the petitioner, and by selective

prosecution of the petitioner for acts which had also been committed by other members of the Kenosha Police Department.

The Court held as a matter of law during the trial that plaintiff's initial termination from employment was unconstitutional. It had previously ruled in a decision and order issued September 15, 1978, that any collateral consequences which plaintiff suffered as a result of the unlawful termination and which were not cured by his subsequent reinstatement with back pay were compensable. With regard to the conduct of the Police and Fire Commission hearing, however, the Court finds that no compensable due process violations occurred. Plaintiff has challenged the adequacy of the notice provided to him prior to the hearing, the jurisdiction of the Commission to hear the charges, the failure of the Commission to set forth explicitly the standard of proof which it was applying to the case, and the adequacy of the written findings issued by the Commission.

■ The Court finds that the notice was indeed insufficient. It provided plaintiff with a statement of the nature of the violation with which he was charged and the approximate date of commission of the violation, but failed to provide him with a statement of the evidence which would be presented with respect to the charges. See Exhibit 23; *Dahlinger v. Town Board of Town of Delavan*, 389 F.Supp. 977 (E.D. Wis.1974); *Weyenberg v. Town of Menasha*, 401 F.Supp. 801 (E.D.Wis.1975). The Court concludes, however, that plaintiff waived his right to object to the sufficiency of the notice. Shortly after the commencement of the Police and Fire Commission hearing, he was offered an adjournment for the purpose of receiving an elaboration of the charges and declined the offer. Plaintiff also stipulated in court on June 5, 1979, that he had sufficient time to prepare for the hearing, and he testified that he was able to present to the Commission all of the evidence which he wished presented.

■ As for plaintiff's objection to the jurisdiction of the Commission to hear the charges, the Court is of the opinion that any objections which the plaintiff had to the composition or jurisdiction of the Commission should have been raised on appeal in state court and are not, at least under the circumstances of this case, a matter of constitutional dimension. This Court is concerned only with possible violations of the Fourteenth Amendment to the United States Constitution and not with possible violations of § 62.13(5), Wis.Stats. Plaintiff's objection to the failure of the Commission to specify the standard of proof which it was applying is also without merit, since the plaintiff admitted the charges and thus they were proven both by a preponderance of the evidence and beyond a reasonable doubt. Finally, as to the Commission's findings, the Court finds that while they could have been more specific, they were minimally sufficient.

■ With regard to plaintiff's claim of selective prosecution, the Court has no doubt that the impetus for plaintiff's termination from employment and for the Police and Fire Commission hearing was the federal indictment which named plaintiff as an unindicted co-conspirator. The Court also recognizes that plaintiff was never charged with or convicted of a criminal offense. The fact remains, however, that plaintiff had committed the acts for which he was disciplined by the Commission, as had officer Fredericksen who also disciplined, and that while there was evidence of other officers having improperly filled out 2101 vehicle registration forms, there was no evidence that other officers had filled out such forms in blank. Consequently, the Court believes that there was a legitimate basis for the charges against the plaintiff, that the Commission's findings were not arbitrary and capricious, and that no violation of the equal protection clause of the Fourteenth Amendment occurred.

Finally, before making its formal findings of fact and conclusions of law, the Court will consider whether the circumstances of plaintiff's initial termination from employment warrant an award of punitive damages. In *Stolberg v. Members of Board of Trustees for State Colleges of*

*State of Connecticut,* 474 F.2d 485 (7th Cir. 1973), the Court noted that punitive damages may be awarded in an appropriate case under 42 U.S.C. § 1983 even in the absence of an award of compensatory damages. The Court declined to decide, however, whether the standard should be that " 'a defendant has acted wilfully and in gross disregard for the rights of the complaining party,' " or whether it should be extended to instances "where the defendant acted with knowledge that he was violating the plaintiff's rights or with reckless disregard of whether he was violating such rights." 474 F.2d at 489. See also, e. g., *Sexton v. Gibbs,* 327 F.Supp. 134, 142–143 (N.D.Tex. 1970), aff'd 446 F.2d 904 (5th Cir. 1971); *Lee v. Southern Home Sites Corporation,* 429 F.2d 290 (5th Cir. 1970); *Morales v. Haines,* 486 F.2d 880, 882 (7th Cir. 1973).

██ Even under the stricter standard, the Court finds that punitive damages in this case are appropriate against the defendant Burkee. As set forth in the findings of fact, the defendant Burkee was advised prior to ordering the termination of the plaintiff that he lacked authority to terminate and could merely suspend; he was specifically informed of plaintiff's rights under § 62.13(5), Wis.Stats., to due process prior to a termination from employment, which rights are consistent with plaintiff's rights under the Fourteenth Amendment, *Dahlinger v. Town Board of Town of Delavan,* supra; *Weyenberg v. Town of Menasha,* supra; and yet knowing the rights to which plaintiff was entitled, the defendant Burkee committed a willful violation of those rights by ordering plaintiff's termination without a prior hearing. With regard to the defendant Bosman, however, who is the only other defendant remaining in this action, the Court finds that in the matter of the plaintiff's termination, he acted only as an agent of the Mayor and, therefore, is entitled to dismissal with prejudice of the action against him.

Upon the record, proceedings, testimony, exhibits, stipulations, and evidence in this action, therefore, the Court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. The plaintiff Robert L. Busche is an adult resident of the State of Wisconsin and the City and County of Kenosha.

2. The defendant Robert L. Bosman was at all times pertinent the Chief of Police for the City of Kenosha, Wisconsin, and acted in that capacity under color of state law and the ordinances and regulations in effect in the City of Kenosha and State of Wisconsin. He was on the Kenosha Police Department from September 16, 1948 to January 31, 1977, and was Chief of Police from February 1, 1968 until January 31, 1977, and more specifically, he was the duly appointed Chief of Police in August 1974.

3. The defendant Wallace E. Burkee was the duly elected Mayor of the City of Kenosha from April 1967 to April 1976, and more specifically during the month of August 1974, and acted in that capacity under color of state law and the ordinances and regulations in effect in the City of Kenosha and State of Wisconsin.

4. On May 1, 1969, Robert L. Busche was appointed to the position of patrolman in the Police Department of the City of Kenosha, Wisconsin.

5. From May 1, 1969 until August 6, 1974, Robert L. Busche was rated by his superiors as an average to above average police officer based upon the following range of rating classifications: unsatisfactory, barely acceptable, below average, average, above average, and outstanding. During this period of time, Robert L. Busche had no formal reprimands or disciplinary actions recorded in his personnel file against him. He was at all times a hardworking and conscientious officer, and prior to August 6, 1974, received several commendations.

6. In May of 1974, the Chief of Police, Robert L. Bosman, was informed by a member of the Federal Bureau of Investigation ("FBI") that officers Busche and Fredericksen, two Kenosha police officers, were cooperating in a federal investigation involving a multi-state stolen car ring.

7. In May of 1974, the Kenosha Police Department conducted an investigation in conjunction with the FBI, involving the activities of White Auto Sales, Robert L. Busche, and Thomas A. Fredericksen.

8. White's Auto Sales was located, at all times relevant, in Kenosha County, outside the limits of the City of Kenosha, Wisconsin.

9. Between the dates of May 1974 and August 6, 1974, defendant Robert L. Bosman learned that officers Busche and Fredericksen were alleged to have signed 2101 forms without inspecting the motor vehicle identification numbers for Leslie White, a car dealer in Kenosha, Wisconsin.

10. Between the dates of May 1974 and August 12, 1974, defendant Robert L. Bosman took notes during the conferences with members of the Federal Bureau of Investigation and was informed of the details concerning the vehicles involved, the dates the 2101 forms were signed by Busche and Fredericksen, and the nature of the conduct that Busche and Fredericksen were engaged in with one Leslie White.

11. Said FBI investigation resulted in a Federal grand jury indictment of Leslie Eugene White, a/k/a Tiny White, in the United States District Court for the Eastern District of Wisconsin on August 5, 1974.

12. Said grand jury indictment stated in paragraph 3–D, page 5, as follows:

"D. As a further part of the scheme to defraud, defendant LESLIE EUGENE WHITE, a/k/a TINY WHITE, obtained the services of THOMAS A. FREDERICKSEN and ROBERT LESLIE BUSCHE, officers of the Kenosha, Wisconsin, Police Department, not named as defendants herein, to sign applications for registration and certificate of title forms of the Division of Motor Vehicles, Department of Transportation of the State of Wisconsin. The defendant, LESLIE EUGENE WHITE, a/k/a TINY WHITE, offered and gave money to said Thomas A. Fredericksen and offered money to said Robert Leslie Busche."

Robert L. Busche and Thomas A. Fredericksen were unindicted co-conspirators as a result of the Federal grand jury indictment.

13. No disciplinary action was taken against the plaintiff Robert L. Busche for the signing of 2101 forms without inspecting the vehicle identification numbers between May 1974 and August 6, 1974.

14. On August 6, 1974, an article appeared in the Milwaukee Sentinel that police officers Busche and Fredericksen were named as unindicted co-conspirators in an eleven-count indictment against Leslie White and others.

15. Between the dates of May 1, 1969 and August 6, 1974, the plaintiff was a Kenosha police officer, was considered by defendant Bosman as an exceptional officer, and had a good reputation as a police officer in the community of Kenosha, Wisconsin, and among his fellow police officers.

16. Prior to August 6, 1974, the plaintiff had obtained an Associate Degree in Law Enforcement from Gateway Technical Institute, and had obtained a Bachelor of Arts Degree, with a major in Law Enforcement, from the College of Racine.

17. On August 6, 1974, Mayor Burkee read about the beforementioned indictment and called Chief Bosman to inquire thereof. Chief Bosman advised Mayor Burkee that he knew of the events referred to in said indictment as the Police Department had been investigating said subject matter since May of 1974 in conjunction with the FBI.

18. During the period of August 6 through August 12, 1974, the Chief of Police had in his possession four written investigative reports concerning this matter before the Federal grand jury and had an oral report from the FBI relative to the FBI's investigation, which oral reports included the statement that Robert L. Busche admitted to the FBI the signing of MVD 2101 Forms in blank.

19. During the period of August 6, 1974 through August 12, 1974, and prior to the termination of Robert L. Busche, Police Chief Bosman informed Mayor Burkee of the contents of said investigation and also

of the fact that Robert L. Busche refused to give a recorded statement to the Police Department on the advice of his attorney.

20. On August 6, 1974, Chief Bosman, after consultation with his staff, suspended Robert L. Busche with pay pending a complete investigation into the before-stated matter. This was done on the initiative of Chief Bosman and not upon the request of Mayor Burkee. Mayor Burkee did not know of said suspension until after it had occurred, and Mayor Burkee did not object to the suspension upon finding out about it.

21. Prior to August 6, 1974, the Chief of Police Robert L. Bosman knew that the standard procedure to suspend or terminate a police officer was to suspend an officer, for cause, pending a complete investigation and possible filing of charges before the Kenosha Police and Fire Commission.

22. When Robert L. Bosman suspended Robert L. Busche on August 6, 1974, pending a complete investigation pursuant to § 62.13 of the Wisconsin Statutes, he was treating the plaintiff in the usual manner for a police officer who might ultimately be suspended or terminated.

23. Between the dates of August 6, 1974 and August 9, 1974, a meeting was held at the Police Department with defendants Bosman and Burkee and with Inspector of Police Joseph Trotta and City Administrator John Serpe. At the meeting, Mayor Wallace E. Burkee issued a verbal order to Robert L. Bosman to terminate Robert L. Busche from the Kenosha Police Department. Bosman informed Mayor Burkee that according to § 62.13 of the Wisconsin Statutes, the plaintiff could not be terminated without a hearing before the Police and Fire Commission. Bosman further stated that he had not completed the investigation concerning the plaintiff's conduct. With full knowledge of the plaintiff's right to a pre-termination hearing, Mayor Burkee ordered the plaintiff terminated without a hearing and stated, "Do you want a couple of crooks on the Police Department?"

24. Defendant Robert L. Bosman knew that he was in charge of the Police Department under the direction of the Mayor, and he had the obligation to obey any lawful order of the Mayor through his knowledge of the Wisconsin Statutes.

25. Defendant Robert L. Bosman knew that defendant Wallace E. Burkee's verbal order to terminate the plaintiff was unlawful but felt compelled to obey the order because of certain rules and regulations in effect at the Kenosha Police Department.

26. On August 9, 1974, a meeting was held in the District Attorney's office. The Mayor, Police Chief, District Attorney Bruce Schroeder, City Administrator John Serpe, a representative of the United States Justice Department, Inspector of Police Joseph Trotta, Robert L. Busche and his attorney, Donald E. Mayew, and Thomas A. Fredericksen and his attorney, David L. Phillips, and other police personnel attended. This meeting was basically informational and to determine whether or not the District Attorney would prosecute officers Busche and Fredericksen, and to discuss the alleged criminal involvement of the plaintiff in signing 2101 forms.

27. The District Attorney Bruce E. Schroeder stated that he did not have enough evidence to prosecute the plaintiff criminally but wanted more of an investigation completed before he made a decision as to whether or not he would prosecute.

28. Robert L. Busche was never prosecuted by the District Attorney or the U. S. Attorney as a result of the investigation of the matter herein referred to.

29. During the meeting at the District Attorney's office on August 9, 1974, the Mayor appeared to be upset and informed Bosman again to terminate the plaintiff and stated in reference to officers Busche and Fredericksen, "These men will never be police officers in this city again."

30. Joseph H. Trotta advised Mayor Burkee at the meeting held at the District Attorney's office on August 9, 1974, that it would be unfair and unjust to terminate the plaintiff and officer Fredericksen without a hearing.

31. As a result of the meeting at the District Attorney's office on August 9, 1974, and at the direction of the defendant Burkee, officers Busche and Fredericksen were given until Monday, August 12, 1974, to resign or they would be terminated and charges filed with the Kenosha Police and Fire Commission.

32. Robert L. Busche did not resign within said three-day period of time.

33. On August 12, 1974, Chief Bosman was of the opinion that State law required a hearing before the Police and Fire Commission prior to an officer being removed from the police force. Chief Bosman felt that the final decision on hiring and firing always rested with the Police and Fire Commission.

34. On August 12, 1974, Chief Bosman terminated the employment of Robert L. Busche by means of a written directive, said termination being without a pre-termination hearing before the Police and Fire Commission.

35. Chief Bosman would not have terminated Robert L. Busche without a pre-termination hearing had it not been for the direct oral order of the Mayor.

36. Chief Bosman did not ask the Mayor for a written order relative to the termination of Busche because he was of the opinion that State law required him to obey both the oral and written orders of the Mayor.

37. Chief Bosman did not ask the Police and Fire Commission or the City Attorney to override the Mayor's order.

38. Chief Bosman was of the opinion that he was a police officer as well as a Police Chief in August of 1974, and that he was bound by the rules and regulations of the Kenosha Police Department, and he was of the opinion that Rule 7, then in effect, spelled out a procedure to use under such circumstances, namely, to bring the unlawful order to the attention of the Mayor as head of the Police Department and then to obey said order.

39. Defendant Robert L. Bosman knew that the plaintiff was married and had chil-dren, knew that the termination would place the plaintiff in financial difficulty, and knew specifically that the plaintiff would not receive pay or benefits from the City of Kenosha.

40. Defendant Robert L. Bosman knew the termination would create additional publicity in the Kenosha News and the local radio media that would harmfully affect the reputation of the plaintiff and the other police officer.

41. Defendant Wallace E. Burkee knew that the termination of the plaintiff would be without pay or benefits, knew that the termination would create additional publicity in the Kenosha News and local radio media that would harmfully affect the reputation of the plaintiff and the other police officer, and would create the impression that the plaintiff and the other officer were guilty of criminal acts.

42. On August 12, 1974, Mayor Burkee did not personally know Robert L. Busche and did not have any personal animosity or hatred towards him.

43. When Chief Bosman and Mayor Burkee discussed the case of Robert L. Busche in August 1974, his case was always discussed in conjunction with officer Fredericksen. On August 6, 1974, Fredericksen was also suspended by Chief Bosman pending a complete investigation. On August 9, 1974, officer Fredericksen's case was also discussed in the District Attorney's office, and he was also given three days to resign, which he did not do. On August 12, 1974, officer Fredericksen was terminated by Chief Bosman under the order of Mayor Burkee.

44. A substantial amount of local radio and newspaper media coverage resulted from the August 6, 1974, suspensions of officers Busche and Fredericksen, and from the August 12, 1974, terminations of officers Busche and Fredericksen.

45. Whereas the publicity surrounding the August 6, 1974, suspension of the plaintiff created the impression in the minds of the public that plaintiff had been accused of committing a criminal act, the termination

created the impression that he had been found guilty of committing a criminal act, and thus the publicity after August 12, 1974, was significantly more harmful to plaintiff's reputation than the publicity between August 6, 1974 and August 12, 1974.

46. At the time the plaintiff was terminated on August 12, 1974, he was given written notice of the charges of Robert L. Bosman.

47. The written charges were filed with the Kenosha Police and Fire Commission and asked the Commission to "uphold the discharge of ROBERT L. BUSCHE pursuant to Section 62.13 of the Wisconsin Statutes."

48. The charges of Robert L. Bosman, Chief of the Police Department, did not disclose to the plaintiff the source, or sources, of information upon which the charges were based.

49. On August 15, 1974, Robert L. Busche, through his attorney, Donald E. Mayew, made a written demand for a hearing before the Board of the Police and Fire Commission in connection with the charges filed against him by Robert L. Bosman, Chief of Police.

50. On August 26, 1974, Jack Rice, President of the Police and Fire Commission, City of Kenosha, Wisconsin, caused a notice of hearing to be served on the plaintiff and his attorney, Donald E. Mayew, such notice announcing, among other things, that there would be "a hearing on the charges of ROBERT L. BOSMAN, Chief of the Department of Police of the City of Kenosha, Wisconsin, as placed against you on the 12th day of August, 1974 . . ." pursuant to § 62.13(5)(d) of the Wisconsin Statutes.

51. Between the dates of August 12, 1974 and September 11, 1974, Robert L. Busche did not receive a salary or other benefits from the Kenosha Police Department.

52. The Police and Fire Commission heard the cases jointly against Busche and Fredericksen on September 11, 17, and 19, 1974.

53. On September 11, 1974, as its first order of business, the Police and Fire Commission, upon the request of their attorneys, reinstated officers Busche and Fredericksen as police officers with back pay on the ground that a procedural error which resulted in a denial of due process occurred in that said officers were not continued on a suspension with pay status during the entire period from August 12, 1974, until the Police and Fire Commission could render a decision on the merits of their case.

54. On September 11, 1974, the plaintiff's attorney, Donald E. Mayew, also moved the Police and Fire Commission to dismiss the action because the Kenosha Police and Fire Commission did not have jurisdiction over the plaintiff because of the illegal firing of August 12, 1974, and because the notice of the charges was inadequate. The Commission denied the motion to dismiss for lack of jurisdiction. District Attorney Breitenbach did, however, offer to provide plaintiff with an elaboration of the charges against him. Plaintiff, by his attorney, declined the offer.

55. At the hearing, the members of the Kenosha Police and Fire Commission were informed that the Chief of Police had the burden of proving the charges, but no one, including the Assistant City Attorney, informed them of the standard of proof necessary to sustain a conviction of the charges.

56. In the course of the Police and Fire Commission hearing, Kenosha police officers Haen, Aull, Wilkinson, Hansler, and Christensen admitted that they had filled out 2101 forms without inspecting the motor vehicle identification number, instead getting the number from the certificate of title. They did not admit to having signed any 2101 forms in blank.

57. The plaintiff admitted during the course of the hearing that he had on a few occasions signed 2101 forms in blank.

58. On September 22, 1974, the Police and Fire Commission suspended Robert L. Busche for a period of sixty days without pay or benefits upon consideration of the

following charges made against Busche by Robert L. Bosman, Chief of Police:

"That ROBERT BUSCHE did, in his capacity as a Police Officer, make entries on a certificate, to-wit, Form 2101, entitled 'Vehicle Registration and Certificate of Title Application', from the Department of Motor Vehicles, Division of Transportation of the State of Wisconsin, which, in a material sense, he intentionally falsified and he knowingly made false statements on said application for certificate of title in that in May of 1973 the said ROBERT BUSCHE did sign for White Auto Sales located in Kenosha County, a number of the said 2101 forms wherein he certified that he had inspected serial numbers of motor vehicles when, in fact, he had signed and certified said 2101 forms in blank without making an inspection of any motor vehicle; that said acts by the said ROBERT BUSCHE were in violation of Section 342.06(2) and 946.-12(4) of the Wisconsin Statutes and Rules numbered three (3), sixteen (16) and twenty-seven (27) of the General Rules and Regulations of the Kenosha Police Department, Revised January 30, 1967, Kenosha, Wisconsin."

The Police and Fire Commission made the following findings and determinations in assessing said sixty-day suspension:

"THE COMMISSION FINDS:

"Based upon the testimony and exhibits having been presented before the Commission that Officer Robert Busche, during the period May, 1973 through July, 1973, did intentionally sign, for White's Auto Sales, located in Kenosha County, and Leslie Eugene White, approximately five (5) Form 2101, of the Division of Motor Vehicles, Department of Transportation, State of Wisconsin, entitled 'Vehicle Registration and Certificate of Title Application' in blank, without making any inspection of any motor vehicle, and thereby made knowingly false statements on said applications for certificate of title.

"THE COMMISSION DETERMINES:

"That such conduct on the part of Officer Robert Busche violated Rules numbered three (3) and sixteen (16) of the General Rules and Regulations of the Kenosha Police Department, revised January 30, 1967, Kenosha, Wisconsin, and is an apparent violation of Sections 342.06(2) and 946.12(4) of the Wisconsin Statutes."

59. The above references to suspension, termination, and disciplinary action are, at present, contained in Busche's personnel file.

60. Busche did not appeal the reasonableness of the action of the Police and Fire Commission to the Circuit Court as provided by State law, did not challenge the nature of the proceedings through certiorari or other means of review, and has commenced no other action to challenge the September 22, 1974, action of the Police and Fire Commission other than in this action.

61. Robert L. Busche, during said sixty-day suspension, suffered an out-of-pocket wage loss of $1,286.36, which figure includes straight pay and averaged overtime.

62. Between the dates of August 13, 1974 and September 12, 1974, the Kenosha News carried the story about the termination of the plaintiff and the other police officer as a prominent local story, and the plaintiff was referred to in such articles as a fired or terminated officer.

63. Between the dates of September 6, 1974 and October 1974, there was a great deal of publicity in the Kenosha News and radio media relating to the suspension, firing, reinstatement, and the eventual suspension of the plaintiff.

64. Mayor Burkee and Chief Bosman did not actively seek publicity from the radio and news media in August and September of 1974 relative to the Busche and Fredericksen matters.

65. Prior to August 12, 1974, there were no written directives of the Kenosha Police Department explaining how to fill out 2101 forms.

66. A 2101 form is an official State of Wisconsin motor vehicle form entitled "Application for Registration and Certificate of

Title." Said form states that "This form to be used for an automobile—motorcycle—power cycle or mobile home that is new or was last registered in another State or Country." The back of said form has a box entitled "Law Enforcement Officer's Certificate of Inspection" with the following instructions within said box: "Identification or Engine and Serial numbers must be taken directly from vehicle. This is to certify that I have personally checked the vehicle described on the reverse side of this application and found the numbers to be:".

67. Prior to August 12, 1974, police officers did not receive any formal training on how to fill out 2101 forms.

68. On October 29, 1974, Chief Bosman issued a memorandum to all department personnel explaining the procedure to be used in filling out 2101 forms, and said memorandum specifically stated, " * * * the officer will check the vehicle and take the identification number, the serial number, or the motor number, whichever applies, directly from the vehicle being checked."

69. On July 2, 1975, Robert L. Busche advised Police Chief Robert L. Bosman, by written communication, that he was interested in the positions of sergeant and juvenile investigator, which positions were posted on June 30, 1975. The positions applied for by Robert L. Busche were filled on August 1, 1975, and Robert L. Busche was not appointed.

70. Chief Bosman filled said positions with personnel having more seniority than Busche, as he considered seniority in promotions very important. Chief Bosman would not have appointed Busche to any of said openings filled on August 1, 1975, as he felt the other appointed applicants were more qualified, and this would have occurred whether or not Busche was charged and disciplined as heretofore indicated, although the disciplinary proceeding was one of the factors considered.

71. On September 1, 1978, Busche was promoted to the position of sergeant in the Kenosha Police Department by unanimous vote of the Police and Fire Commission.

72. Following his suspension from employment on August 6, 1974, plaintiff was not unduly upset or depressed because he believed that the suspension was temporary and natural in view of the federal indictment and that he would soon be reinstated. Following his termination on August 12, 1974, however, plaintiff became severely depressed, changed his drinking habits and began to drink heavily, became moody and quarrelsome, had marital difficulties which eventually ended in divorce, and had financial difficulties due to his loss of income. In part because of his financial difficulties and in part because of a reluctance to discuss his problems, plaintiff did not seek psychiatric or medical attention.

73. Following his sixty-day suspension on September 22, 1974, and continuing even after he recommenced working on October 21, 1974, plaintiff was depressed and bitter about the termination and suspensions. His physical and alcoholic problems cleared up shortly after he recommenced work, and he performed his work at all times in an able and conscientious manner, but his attitude did not revert to normal for approximately one year after he recommenced working.

74. The publicity surrounding plaintiff's suspension on August 6, 1974, and particularly that resulting from his termination on August 12, 1974, created the impression in the minds of the public that plaintiff was guilty of criminal involvement in a stolen car ring. There was substantial publicity and public discussion about plaintiff's situation from August 1974 through the end of the year. Thereafter to the present, there has been intermittent discussion of the incident in the Kenosha area, and plaintiff is still occasionally the subject of negative comment by members of the public and by fellow workers.

## CONCLUSIONS OF LAW

1. This action was brought pursuant to 42 U.S.C. § 1983, and the court has jurisdiction under 28 U.S.C. §§ 1343 and 1331.

2. On motion of the plaintiff, the action was dismissed against former defendant Joseph H. Trotta on June 6, 1979.

3. By stipulation of the parties, the action was dismissed against former defendants Bernice Nagy, Jack Rice, Fred Hopf, Gregg Vigansky, Bernard Dunlap, and Jerold W. Breitenbach on June 25, 1979.

4. The defendants Robert L. Bosman and Wallace E. Burkee were acting at all times relevant under color of state law.

5. Section 62.13(5), Wisconsin Statutes, and particularly subsection (h) thereof, gave plaintiff a proprietary interest in his position as a tenured police officer for the City of Kenosha, Wisconsin.

6. The August 12, 1974, termination of plaintiff was in violation of the due process clause of the Fourteenth Amendment to the United States Constitution in that it was accomplished without a pre-termination hearing and constitutes a violation of 42 U.S.C. § 1983.

7. The defendant Burkee committed a willful and knowing violation of plaintiff's constitutional rights in ordering his termination without a prior hearing because the defendant Burkee was previously advised of plaintiff's rights and ordered the termination despite his full awareness of those rights.

8. The defendant Bosman acted merely as an agent of the defendant Burkee in terminating the plaintiff from employment on August 12, 1974, and is therefore not liable for a violation of plaintiff's constitutional rights.

9. The constitutional and civil rights of the plaintiff were not violated as a result of the hearing held by the Police and Fire Commission on and after September 11, 1974, in that:

(a) While the charges were vague in that they failed to specify the factual basis for the charges, plaintiff waived his right to object to the sufficiency of the charges when he was offered and declined the opportunity for a further elaboration of the charges. Busche was also not prejudiced as a result of said charges because he had sufficient time to prepare and was able to present all of the evidence which he wished presented.

(b) The fact that the Police and Fire Commission did not specify what standard it would use to weigh the evidence, such as "beyond a reasonable doubt," "preponderance of the evidence," etc., is not material. In the absence of a stated standard, a preponderance of the evidence standard is presumed to have been used and such standard is adequate in disciplinary cases. Also, plaintiff admitted the charges, and therefore the charges were proved by the highest possible standard, "beyond a reasonable doubt."

10. The plaintiff was not selectively prosecuted in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution.

11. The hearing held before the Kenosha Police and Fire Commission on September 11, 17, and 19, 1974, after the unconstitutional termination of August 12, 1974, denied the plaintiff a meaningful opportunity to be heard, contrary to the due process clause of the Fourteenth Amendment to the United States Constitution, because the harm that a pre-termination hearing was designed to prevent had already taken place on August 12, 1974, when the plaintiff was terminated without a hearing. The purpose of a pre-termination hearing is to protect a government employee's reputational interest and to protect an employee's reasonable expectation of continued employment, both protected by the due process clause of the Fourteenth Amendment to the United States Constitution. A hearing after an unconstitutional termination is not a substitute for a hearing prior to termination as required by law, because by the time the plaintiff had an opportunity to be heard, his reputation was adversely affected, he had not been receiving wages, and his status as a police officer had been terminated; therefore, plaintiff is entitled to compensatory damages resulting from the August 12, 1974, termination.

12. Pursuant to 42 U.S.C. § 1988, the plaintiff is entitled to recover his reasonable attorney's fees.