Robert Leslie BUSCHE, Plaintiff-Appellee, Cross-Appellant,

v.

Wallace E. BURKEE, Defendant-Appellant, Cross-Appellee.

Nos. 80–1248, 80–1345.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1981.

Decided May 21, 1981.

James W. Conway, Kenosha, Wis., for defendant-appellant, cross-appellee.

Walter W. Stern, Kenosha, Wis., for plaintiff-appellee, cross-appellant.

Before CUMMINGS and CUDAHY, Circuit Judges, and BONSAL, Senior District Judge.*

CUDAHY, Circuit Judge.

This case arises out of the August 12, 1974 termination of plaintiff-appellee, cross-appellant Robert Leslie Busche from his employment as a police officer for the City of Kenosha, Wisconsin. The district court found that this termination violated Busche's due process rights under the Fourteenth Amendment to the United States Constitution and awarded compensatory and punitive damages, attorney's fees and costs to Busche.[1] Defendant-appellant, cross-appellee Wallace E. Burkee, the former mayor of Kenosha, does not contest the district court's finding that Busche was terminated without due process. Burkee appeals only from the amount of damages, fees and costs awarded to Busche. On cross-appeal, Busche challenges other aspects of the district court's judgment. We affirm the district court, except for its award of attorney's fees, which is remanded for further consideration in light of our opinion in *Muscare v. Quinn*, 614 F.2d 577 (7th Cir. 1980).

---

* The Honorable Dudley B. Bonsal, Senior District Judge for the Southern District of New York, is sitting by designation.

1. The district court's opinions in this case are published at 474 F.Supp. 484 (E.D.Wis.1979) (liability, compensatory and punitive damages) and 483 F.Supp. 1326 (E.D.Wis.1980) (attorney's fees).

### I.

Robert Leslie Busche joined the Kenosha police department as a patrolman on May 1, 1969.[2] One of his responsibilities as a patrolman was to complete State of Wisconsin motor vehicle forms entitled "Application for Registration and Certificate of Title" ("Section 2101 forms"). On the back of these forms, which were used to register cars that were new or registered in a different county, the following instructions appear in a box designated "Law Enforcement Officer's Certificate of Inspection": "Identification of Engine and Serial numbers must be taken directly from vehicle. This is to certify that I have personally checked the vehicle described on the reverse side of this application and found the numbers to be: _____."

Sometime in May 1974, Robert L. Bosman, the Kenosha Chief of Police, was informed by a Federal Bureau of Investigation ("FBI") agent that Busche and Thomas A. Fredericksen, also a Kenosha police officer, were cooperating in a federal grand jury investigation of an interstate car theft conspiracy. The Kenosha police department joined in this investigation, which focused, *inter alia*, on the activities of Busche, Fredericksen and Leslie Eugene White, the owner of White Auto Sales, a car dealership located a few miles outside the Kenosha city limits. Bosman learned from this investigation that Busche and Fredericksen were alleged to have signed 2101 forms for White without physically inspecting the identification numbers of the vehicles for which the 2101 forms were prepared.

In an eleven count indictment returned on August 5, 1974 against White and others, Busche and Fredericksen were named as unindicted co-conspirators in the car theft ring because of their role in signing 2101 forms for White.[3]

After learning of this indictment from an article in the August 6, 1974, Milwaukee Sentinel, Mayor Burkee called Bosman to inquire about Busche's and Fredericksen's involvement in the activities described in the indictment. Bosman informed Burkee that the police department had been investigating the matter in conjunction with the FBI since May 1974. Also on August 6, 1974, after consultation with his staff, Bosman decided to suspend Busche with pay until the investigation was completed.

Sometime between August 6, 1974 and August 9, 1974, Mayor Burkee verbally instructed Bosman to terminate Busche's employment. Bosman informed the Mayor that, under Wisconsin law, Busche could not be terminated without a hearing before the Kenosha Police and Fire Commission (the "Commission").[4] Burkee, however, insisted

---

2. These facts are drawn from the district court's findings, which, with the exception of the findings relating to damages, Burkee does not dispute.

3. Paragraph 3–D of the grand jury indictment reads:

 D. As a further part of the scheme to defraud, Defendant Leslie Eugene White, a/k/a/ Tiny White, obtained the services of Thomas A. Fredericksen and Robert Leslie Busche, officers of the Kenosha, Wisconsin, Police Department, not named as defendants herein, to sign applications for registration and certificate of title forms of the Division of Motor Vehicles, Department of Transportation of the State of Wisconsin. The defendant, Leslie Eugene White, a/k/a/ Tiny White, offered and gave money to said Thomas A. Fredericksen and offered money to said Robert Leslie Busche.

4. Wis.Stat. § 62.13 (1977), to which Bosman referred, provides in relevant part:

 (5) Disciplinary Actions Against Subordinates.

 (a) A subordinate may be suspended as hereinafter provided as a penalty. He may also be suspended by the commission pending the disposition of charges filed against him.

 (b) Charges may be filed against a subordinate by the chief [of Police], by a member of the board [of Police and Fire Commissioners], by the board as a body, or by any aggrieved person. Such charges shall be in writing and shall be filed with the president of the board. Pending disposition of such charges, the board or chief may suspend such subordinate.

 . . . .

 (d) Following the filing of charges in any case, a copy thereof shall be served upon the person charged. The board shall set date for hearing not less than 10 days nor more than 30 days following service of charges. The hearing on the charges shall be public, and

that Busche be terminated without a hearing, stating to Bosman, "Do you want a couple of crooks on the Police Department?"

At a second meeting on August 9, 1974, Mayor Burkee again ordered Bosman to terminate Busche's employment, and said in reference to Busche and Fredericksen, "These men will never be police officers in this city again." At that meeting, Inspector of Police Joseph H. Trotta also informed Burkee that it would be unfair and unjust to terminate Busche and Fredericksen without a hearing. At the direction of Burkee, Busche and Fredericksen were given the option of resigning by August 12, 1974 or being terminated. Neither Busche nor Fredericksen resigned. On August 12, 1974, Bosman sent written notices of termination to both men.[5]

At the time he was terminated, Busche received a copy of the charges that Bosman had simultaneously filed with the Kenosha Police and Fire Commission. These charges requested the Commission to "uphold the discharge of Robert L. Busche pursuant to Section 62.13 of the Wisconsin Statutes."

Busche made a written demand for a hearing before the Commission on August 15, 1974. The president of the Commission notified Busche on August 26, 1974 that a hearing would be held on September 11, 1974. At that hearing, the Commission ordered Busche and Fredericksen to be reinstated with back pay after determining that

it was improper for them to have been terminated before a decision on the merits of their cases had been rendered by the Commission. At his hearing, Busche testified that he had signed blank 2101 forms for White. On September 22, 1974, after three days of hearings, the Commission ordered that Busche be suspended for sixty days without pay or benefits. Although Busche had the right to appeal this decision to the Kenosha County Circuit Court, he did not do so.

On August 9, 1976, Busche filed a complaint in federal district court alleging that Burkee, Bosman, Trotta and the five members of the Commission had violated his rights under the due process clause of the Fourteenth Amendment to the United States Constitution. By stipulation, plaintiff's action was dismissed against all defendants except Bosman and Burkee. After a three day trial, the district court dismissed the action against Bosman with prejudice and found Burkee liable for $10,000 in compensatory damages, $2,000 in punitive damages, reasonable attorney's fees and costs. In its final decision and order dated February 15, 1980, the district court affirmed its earlier decision and granted Busche's request for attorney's fees in the amount of $9,175.

Burkee filed a timely appeal from the district court's judgment, alleging that the district court wrongly assessed damages, fees and costs. On cross-appeal, Busche

---

both the accused and the complainant may be represented by an attorney and may compel the attendance of witnesses by subpoenas

. . . .

(e) If the board determines that the charges are not sustained, the accused, if he has been suspended, shall be immediately reinstated and all lost pay restored. If the board determines that the charges are sustained, the accused, by order of the board, may be suspended or reduced in rank, or suspended and reduced in rank, or removed, as the good of the service may require.

. . . .

(h) No person shall be deprived of compensation while suspended pending disposition of charges.

5. Although Busche's notice of termination was signed and delivered by Bosman, the district court found that Bosman felt "compelled" to

obey Burkee's verbal order to terminate Busche. 474 F.Supp. at 489.

Chief Bosman was of the opinion that he was a police officer as well as a Police Chief in August of 1974, and that he was bound by the rules and regulations of the Kenosha Police Department, and he was of the opinion that Rule 7, then in effect, spelled out a procedure to use under such circumstances, namely, to bring the unlawful order to the attention of the Mayor as head of the Police Department and then to obey said order. *Id.* at 490. At another point in its opinion, however, the district court stated that Bosman knew he "had the obligation to obey any *lawful* order of the Mayor through his knowledge of the Wisconsin Statutes." *Id.* at 489 (emphasis supplied).

challenges the district court's rejection of his claims concerning the constitutional sufficiency of the Commission hearing and the allegedly selective prosecution of Busche and Fredericksen. Busche also challenges the district court's dismissal of Bosman from this action.

## II.

Busche challenges the constitutional sufficiency both of the charges filed against him before the Commission and of the Commission's written statement of the evidence relied on and the reasons for its decision.

■ Due process requires that a person receive notice of charges brought against him so that he may understand why he is being investigated and have an opportunity to prepare a response. *See Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974). The charges filed against Busche read, in relevant part:

That Robert Busche did, in his capacity as a Police Officer, make entries on a certificate, to-wit, Form 2101, entitled 'Vehicle Registration and Certificate of Title Application', from the Department of Motor Vehicles, Division of Transportation of the State of Wisconsin, which, in a material sense, he intentionally falsified and he knowingly made false statements on said application for certificate of title in that in May of 1973 the said Robert Busche did sign for White Auto Sales located in Kenosha County, a number of the said 2101 forms wherein he certified that he had inspected serial numbers of motor vehicles when, in fact, he had signed and certified said 2101 forms in blank without making an inspection of any motor vehicle; that said acts by the said Robert Busche were in viola-

tion of Section 342.06(2) and 946.12(4) of the Wisconsin Statutes and Rules numbered three (3), sixteen (16) and twenty-seven (27) of the General Rules and Regulations of the Kenosha Police Department, Revised January 30, 1967, Kenosha, Wisconsin.

The district court found that this notice was insufficient, since it "failed to provide [Busche] with a statement of the evidence which would be presented with respect to the charges." 474 F.Supp. at 486. The court concluded, however, that Busche had waived any objection to the sufficiency of the notice when he declined the Commission's offer of an adjournment for the purpose of receiving an elaboration of the charges. The district court also found that Busche was not prejudiced by the incomplete notice since "he had sufficient time to prepare for the hearing, and ... was able to present all of the evidence which he wished presented." *Id.*

■ Without deciding whether Busche waived his right to challenge the sufficiency of the notice,[6] we believe the district court properly found that Busche was not prejudiced by the incomplete charges. He was well aware of the nature of the Commission's inquiry, since he had participated closely in the grand jury's investigation of the identical activities.[7] Both at trial and on appeal, Busche has been unable to identify any prejudice he suffered because of the insufficient notice. He cannot identify any witnesses or physical evidence he might have presented had he received more complete notice. Moreover, at the Commission hearing itself, the district court found that Busche admitted he had "on a few occasions signed 2101 forms in blank." 474 F.Supp. at 491. Although this admission did not operate to waive Busche's due process

---

**6.** Busche argues with ample support from record evidence that he was in severe financial difficulty in September 1974 because of his termination without pay. He therefore maintains that it is improper to characterize his rejection of the Commission's adjournment offer as a waiver, since his economic circumstances did not permit him to further postpone the hearing that he properly should have had before his termination. We do not decide whether these circumstances are sufficient to require rejection of the district court's determination that Busche voluntarily relinquished his right to challenge the sufficiency of the notice.

**7.** Busche testified at trial that the Commission did not question him about any 2101 forms prepared in connection with any vehicles that he had not previously discussed with the FBI.

rights, it is persuasive evidence that he was not prejudiced by the failure of the charges filed against him to list the evidence that would be presented before the Commission. *See Behan v. City of Dover*, 419 F.Supp. 562, 566–69 (D.Del.1976), *aff'd* 559 F.2d 1207 (3rd Cir. 1977). We agree with the district court that Busche suffered no compensable deprivation of due process as a result of the incomplete notice he received from Bosman.

Busche also contends that the Commission's written findings and conclusions were constitutionally deficient. Those findings read:

> The Commission Finds:
>
> Based upon the testimony and exhibits having been presented before the Commission that Officer Robert Busche, during the period May, 1973 through July, 1973, did intentionally sign, for White's Auto Sales, located in Kenosha County, and Leslie Eugene White, approximately five (5) Form 2101, [sic] of the Division of Motor Vehicles, Department of Transportation, State of Wisconsin, entitled 'Vehicle Registration and Certificate of Title Application' in blank, without making any inspection of any motor vehicle, and thereby made knowingly false statements on said application for certificate of title.
>
> The Commission Determines:
>
> That such conduct on the part of Officer Robert Busche violated Rules numbered three (3) and sixteen (16) of the General Rules and Regulations of the Kenosha Police Department, revised January 30, 1967, Kenosha, Wisconsin, and is an apparent violation of Section 342.06(2) and 946.12(4) of the Wisconsin Statutes.

The district court found that these findings, although they could have been more specific, were "minimally sufficient." 474 F.Supp. at 486. We agree. A written statement by factfinders as to the evidence relied on and reasons for its decision serves several interests. It allows for more effective review of the factfinder's decision, helps to insure that the factfinder acts fairly, and protects the subject of the inquiry from "collateral consequences based on a misunderstanding of the nature of the original proceeding." *Wolff v. McDonnell*, 418 U.S. 539, 565, 94 S.Ct. 2963, 2979, 41 L.Ed.2d 935 (1974). The written statement issued by the Commission does not disserve any of these interests to a degree necessary to find a due process violation. Busche does not allege that the findings and conclusions hampered his ability to take an appeal,[8] nor does he claim that the Commission's actions were arbitrary or unfair. And we believe that Busche's promotion to sergeant of the Kenosha Police Department on September 1, 1978 by a unanimous vote of the Commission demonstrates that Busche has not suffered unwarranted collateral consequences because of the Commission's allegedly insufficient written findings and conclusions.[9]

Busche also argues that the record of the sixty day suspension should be expunged because the district court found that the Commission's hearing "denied the plaintiff a meaningful opportunity to be heard." 474 F.Supp. at 494. This argument is without merit since it is based on a misreading of the district court's opinion. The district court found only that the Commission hearing did not "cure" the due process violation that arose from Busche's unlawful August 12, 1974 termination. The

---

**8.** Busche testified at trial that he decided not to appeal the Commission's determination to the Kenosha County Circuit Court because he feared that the circuit court might order a rehearing which could have resulted in a longer suspension or termination. He did not indicate that he was deterred from taking an appeal because of the insufficiency of the Commission's written statement.

**9.** Busche argues that his July 2, 1975 applications for the positions of sergeant and juvenile

investigator would have been accepted but for the record of his suspension. There is sufficient evidence, however, to support the district court's conclusion that "Bosman would not have appointed Busche to any of said openings filled on August 1, 1975, as he felt the other appointed applicants were more qualified, and this would have occurred whether or not Busche was charged and disciplined. . . ." 474 F.Supp. at 493.

district court explicitly determined that the Commission hearing itself met the requirements of due process. 474 F.Supp. at 486. We reject any suggestion in Busche's argument that the Commission was forever barred from conducting a constitutionally valid investigation simply because his initial termination was constitutionally infirm. *See Skehan v. Board of Trustees of Bloomsburg State College*, 590 F.2d 470, 494 (3rd Cir. 1978), *cert. denied*, 444 U.S. 832, 100 S.Ct. 61, 62 L.Ed.2d 41 (1979); *Jones v. Snead*, 431 F.2d 1115, 1117 (8th Cir. 1970).[10]

Busche also challenges the dismissal of Bosman from this action. The district court found that Bosman "acted merely as an agent of . . . Burkee in terminating the plaintiff from employment on August 12, 1974, and is therefore not liable for violation of plaintiff's constitutional rights." 474 F.Supp. at 494. We reject this broad conclusion to the extent it may imply that an individual is relieved of personal responsibility for perpetrating unlawful acts against another simply because he is acting as an agent or subject to a superior's orders. *See Little v. Barreme*, 6 U.S. (2 Cranch), 2 L.Ed. 243, 170 (1804) (per Marshall, C. J.) (commander of an American warship liable in damages for unlawfully seizing the Flying Fish, a Danish brigantine, even though the seizure was made pursuant to a superior's instructions). We believe, however, that in the particular circumstances before us, the district court properly dismissed Bosman from this action.

It is clear from the record that Bosman made every reasonable effort to protect Busche's rights. First, although he had been investigating Busche's and Fredericksen's improper activities for four months prior to the issuance of the federal grand jury indictment, he did not initiate any disciplinary action during that period. On August 9, 1976, after the indictment was issued, Bosman suspended Busche and Fredericksen with pay pending completion of the investigation. This action was within the scope of Bosman's authority and we believe it was appropriate under the circumstances. Second, Bosman signed and delivered Busche's letter of termination only after being ordered twice to do so by the Mayor and only after informing the Mayor of his belief that the proposed termination was unlawful. The district court found that Bosman believed he was "compelled to obey the order because of certain rules and regulations in effect at the Kenosha Police Department." 474 F.Supp. at

---

**10.** Busche also contends that he was selectively prosecuted in violation of his equal protection and due process rights because five other officers who engaged in similar conduct were not prosecuted. We approve the district court's disposition of this claim:

> With regard to plaintiff's claim of selective prosecution, the Court has no doubt that the impetus for plaintiff's termination from employment and for the Police and Fire Commission hearing was the federal indictment which named plaintiff as an unindicted co-conspirator. The Court also recognizes that plaintiff was never charged with or convicted of a criminal offense. The fact remains, however, that plaintiff had committed the acts for which he was disciplined by the Commission, as had officer Fredericksen who was also disciplined, and that while there was evidence of other officers having improperly filled out 2101 vehicle registration forms, there was no evidence that other officers had filled out such forms in blank. Consequently, the Court believes that there was a legitimate basis for the charges against the plaintiff, that the Commission's findings were not arbitrary and capricious, and that no violation of the equal protection clause of the Fourteenth Amendment occurred.

474 F.Supp. at 486.

> The Constitution does not require the state to choose between prosecuting every individual implicated in unlawful activity or prosecuting none of them. Where, as here, there is no evidence of class-based or racially-motivated discrimination, *cf. Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1885), and no governmental policy of non-prosecution, *cf. United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), the state has wide latitude in selecting which wrongdoers it will prosecute. Busche and Fredericksen admitted to signing 2101 forms in blank, while the other officers admitted only to signing such forms without physically inspecting the vehicle's identification and registration numbers. In addition, since deterrence is one of the purposes of prosecution, the state may justifiably select for prosecution those individuals, such as Busche and Fredericksen, whose unlawful activity has received wide publicity.

489. These rules apparently provided that Bosman was to "bring the unlawful order to the attention of the Mayor as head of the Police Department and then to obey said order." 474 F.Supp. at 490. Third, Bosman requested the Commission to uphold Busche's discharge immediately after he delivered the termination letter.

But we think there is a more compelling factor, without which we would not be able to find agency to be sufficient for exculpation. For we note that, as Mayor, Burkee was head of the Kenosha Police Department, and his order requiring Busche's termination was not outside the range of normal personnel actions that an executive officer is, in general, empowered to undertake or initiate (with, of course, proper deference to procedural requirements). Burkee did not, for example, order corporal punishment or incarceration. Although Bosman held the belief (which was subsequently proved correct) that Busche could not be discharged, without a pre-termination hearing, it is unreasonable to expect that Bosman should have disobeyed the Mayor's direct order because of this belief, when Bosman also believed he was required by law to obey the Mayor's orders after informing the Mayor that he believed the orders to be unlawful, and when the Mayor's orders were not outside the range of normal personnel actions.[11]

### III.

Burkee challenges the district court's award of compensatory and punitive damages, attorney's fees and costs. We shall consider each component of the award in sequence.

#### A. Compensatory damages

■ Damages are awarded in § 1983 actions to compensate individuals for injuries resulting from the deprivation of their constitutional rights. *Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). And, since the protection af-

forded by § 1983 "was not intended by Congress to differ from state to state," *Basista v. Weir*, 340 F.2d 74, 86 (3rd Cir. 1965), federal, not state, common law governs the determination of damages in § 1983 actions. This federal law of damages must be fashioned to promote the purposes underlying the enactment of § 1983. As stated in *Carey v. Piphus*, 435 U.S. at 258–59, 98 S.Ct. at 1049, 1050 (citations omitted; brackets in original):

> The purpose of § 1983 would be defeated if injuries caused by the deprivation of constitutional rights went uncompensated simply because the common law does not recognize an analogous cause of action. In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question.... We agree with Mr. Justice Harlan that 'the experience of judges in dealing with private [tort] claims supports the conclusion that courts of law are capable of making the types of judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of [constitutional] rights.'

■ The amount of damages necessary to compensate an individual for the deprivation of constitutional rights is a question of fact and therefore not to be upset on appeal unless the district court's determination is clearly erroneous. Fed.R.Civ.P. 52(a); *First National Bank of Chicago v. Material Service Corp.*, 597 F.2d 1110, 1119 (7th Cir. 1979). We can find that a factual determination is clearly erroneous only if, after reviewing the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).

■ Burkee maintains that the district court's award of $10,000 was not justi-

---

11. As the record indicates, Busche was granted a prompt post-termination hearing. And, as this action demonstrates, Busche could be com-

pensated for injuries he suffered as a result of the deprivation of his procedural due process rights.

fied by the evidence. This award was not based on out-of-pocket or other tangible losses but rather on damage to reputation and emotional distress that Busche suffered as a result of his unlawful termination. Compensation for such injuries must not be denied simply because it is not easily quantified. Conversely, such injuries cannot be presumed to flow from every deprivation of constitutional rights. Instead, plaintiff must prove the existence and magnitude of subjective injuries with "competent evidence." *Carey v. Piphus*, 435 U.S. at 264 n.20, 98 S.Ct. at 1052.[12]

The district court found that Busche had a reputation as a hard-working and conscientious officer before he was unlawfully discharged. It found that this reputation was significantly tarnished by the publicity surrounding the termination. 474 F.Supp. at 493. The district court also found that "[f]ollowing his termination . . . plaintiff became severely depressed, changed his drinking habits and began to drink heavily, became moody and quarrelsome, had marital difficulties which eventually ended in divorce, and had financial difficulties due to his loss of income." *Id.* After carefully reviewing the record, we cannot say that the evidence of Busche's emotional distress and damaged reputation was insufficient to sustain the district court's finding that an award of $10,000 was necessary to properly compensate him for the deprivation of his due process rights. Such a determination is, by its nature, highly subjective.[13] Lacking the ability to

---

**12.** Burkee suggests that the testimony of medical or psychiatric experts is necessary to establish a compensable emotional injury. While such testimony could have strengthened Busche's case, its absence from the record is not fatal to his claims. As the Supreme Court stated in *Carey v. Piphus*, 435 U.S. at 264 n.20, 98 S.Ct. at 1052, "[a]lthough essentially subjective, genuine injury in this respect [mental suffering or emotional anguish] may be evidenced by one's conduct and observed by others."

**13.** At least part of the district court's finding of damage to Busche's reputation rests on the publicity surrounding the August 12, 1974 termination. Thus, the district court found:

> Whereas the publicity surrounding the August 6, 1974, suspension of the plaintiff created the impression in the minds of the public that plaintiff had been accused of committing a criminal act, the termination created the impression that he had been found guilty of committing a criminal act, and thus the publicity after August 12, 1974, was significantly more harmful to plaintiff's reputation than the publicity between August 6, 1974 and August 12, 1974.

474 F.Supp. at 490–91. Burkee contends that the district court erred in considering publicity about the termination as an element of damages without first finding that this publicity was untrue. This argument misapprehends the nature of plaintiff's § 1983 action. The wrongful act in the instant case was the unlawful termination of Busche, not the utterance of untruths. Plaintiff is entitled to fair compensation for injuries caused by the deprivation of his constitutional right to due process of law. *Carey v. Piphus*, 435 U.S. at 258, 98 S.Ct. at 1052. Therefore, the injury to Busche's reputation caused by the truthful (and foreseeable) publicity of the unlawful termination was prop-

erly considered by the district court as an element of damages.

Defendant similarly misconceives the purpose of § 1983 damage awards in arguing that plaintiff must allege and prove the elements of the state tort of intentional infliction of emotional distress before recovering damages for mental and emotional anguish. Again, to be compensated for such damages in a § 1983 action, plaintiff need only demonstrate by competent evidence (as Busche did here) that the mental and emotional distress was caused by the denial of procedural due process. *See Carey v. Piphus*, 435 U.S. at 263–64, 98 S.Ct. at 1052.

Defendant also maintains that Busche's damages should be limited to those arising during the approximately thirty days between his unlawful termination and the Commission hearing. Burkee properly argues that he is not liable to Busche for any reputational damage or emotional suffering flowing from the August 9, 1974 suspension or from the sixty day suspension without pay ordered by the Commission, since neither of those suspensions violated Busche's right to due process of law. Burkee is liable, however, for any injuries that were the proximate result of the unlawful termination, regardless whether these injuries were manifested before or after the date of the Commission hearing. Thus, the district court properly took into consideration in making its award that not all of plaintiff's injuries were caused by the conduct of the defendant Burkee, and the damages assessed against Burkee were only those which the Court found to be attributable to his illegal conduct, i. e., to his initial termination of the plaintiff from employment.

483 F.Supp. at 1328.

judge the credibility of plaintiff's eleven witnesses, we cannot say the district court's award was clearly erroneous.[14]

### B. Punitive damages

 In its order dated August 15, 1979, the district court assessed $2,000 in punitive damages against Burkee because of his "willful and intentional violation of plaintiff's constitutional rights." Burkee does not dispute the authority of the district court to award punitive damages under § 1983 in an appropriate case. *See Carey v. Piphus*, 435 U.S. at 257 n.11, 98 S.Ct. at 1049 n.11. As with compensatory damages, the award of punitive damages is within the discretion of the trial court.

> The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact.

*Stolberg v. Members of the Board of Trustees for the State Colleges of Connecticut*, 474 F.2d 485, 489 (2d Cir. 1973) (quoting *Lee v. Southern Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir. 1970)).

 We believe the district court's award of punitive damages was not clearly erroneous. The record establishes that Burkee ordered Busche's discharge even though he had been repeatedly advised that he was without legal authority to do so. Both Chief of Police Bosman and Inspector of Police Trotta had informed Burkee that Busche could be terminated only after he received a hearing before the Police and Fire Commission. This intentional and considered disregard of Busche's legal rights demonstrates that Burkee acted with the "malicious intent" necessary to support the district court's award of punitive damages. *See Konczak v. Tyrrell*, 603 F.2d 13, 18 (7th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980).

Burkee also argues that punitive damages were wrongly awarded because this was a unique and isolated incident which is unlikely to recur. He properly argues that a primary function of punitive damages is to deter similar future conduct. Although Burkee may not be in a position to perpetrate such unlawful conduct again (and certainly without attempting to divine Burkee's motives), we think the district court could have reasonably concluded that an award of punitive damages in this case might deter executive officials in the future from willfully disregarding the legal rights of public employees in situations where such disregard might seem justified (and possibly politically compelled) in the heat of the moment.

### C. Attorney's Fees

 Busche requested $9,175 in attorney's fees, which represented 183.5 hours of work at $50 per hour. The district court awarded the full amount requested by Busche pursuant to the Civil Rights Attorney's Fees Awards Act, which provides that in civil rights actions under § 1983 and

---

14. Burkee also argues that Busche should be awarded only nominal damages because he admitted at the Commission hearing that he had signed several 2101 forms in blank. This admission, however, does not undermine the foundation on which Busche's right to a hearing rests. A hearing is required in the due process context, *inter alia*, to protect against erroneous or unjustified deprivations of interests protected by the due process clause. *See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 13, 99 S.Ct. 2100, 2107, 60 L.Ed.2d 668 (1979); *Carey v. Piphus*, 435 U.S. 247, 259, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978). In the present case, the Commission's decision demonstrates that Burkee's termination of Busche was unwarranted, since, after carefully weighing the evidence, the Commission determined that the proper penalty for Busche's improper acts was not termination but only a sixty day suspension without pay. Burkee's argument would have had merit only if the Mayor's decision to terminate Busche had been subsequently upheld by the Commission. *See Carey v. Piphus*, 435 U.S. at 260, 98 S.Ct. at 1050 ("if petitioners can prove on remand that '[respondents] would have been suspended even if a proper hearing had been held,' then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions.") (citation omitted).

certain other statutes, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1976). This discretion is limited by the Act's legislative history, which provides that the successful plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." S.Rep.No. 94–1011, 94th Cong., 2d Sess. 4, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5912 (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)).

■ Burkee does not contest the number of hours expended by Busche's attorneys or the reasonableness of the $50 hourly rate. Rather, he contends that the award was based on an erroneous understanding of the relevant legal standards. Fees should be awarded, Burkee urges, only to those parties who bring actions "in the capacity of private attorneys general" to enforce the civil rights statutes. He seeks, in effect, to limit the application of § 1988 to class actions that seek equitable relief. This narrow construction contradicts the unqualified language of the Act. Section 1988 explicitly extends to all § 1983 actions, without regard to the number of plaintiffs or type of relief sought. *See Konczak v. Tyrrell*, 603 F.2d 13 (7th Cir. 1979); Comment, *Attorney's Fees in Damage Actions Under the Civil Rights Attorney's Fees Awards Act of 1976*, 47 U.Chi.L.Rev. 332 (1980). A prevailing plaintiff in a § 1983 action "should receive fees almost as a matter of course," *Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir. 1978), unless special circumstances render such an award unjust. Burkee has indicated no such circumstances in the present case.

■ Burkee also argues that the award of fees in this case was improper because Busche was not a "prevailing party" within the meaning of § 1988 since he did not succeed in his claims regarding the constitutional sufficiency of the Commission hearing and since all but one of the defendants were dismissed from the action. Busche need not prevail on every issue to be award-ed attorney's fees under § 1988. Indeed, such a requirement would "stifle the presentation of innovative causes of action and would force courts to rule on every issue in a case, even if its rulings would be redundant." *Ohland v. City of Montpelier*, 467 F.Supp. 324, 349 (D.Vt.1979). We note with approval the definition of prevailing party set forth by the First Circuit Court of Appeals in *Nadeau v. Helgemoe*, 581 F.2d 275, 278 (1st Cir. 1978): "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

■ The district court must consider the individual circumstances of each case to determine whether a plaintiff is the "prevailing party" for purposes of § 1988. *Murphy v. Kolovitz*, 635 F.2d 662, at 663 (7th Cir. 1981). We believe the district court's finding that Busche was the prevailing party here is not in error, since Busche succeeded in demonstrating that he suffered substantial injuries because of Burkee's intentional violation of his constitutional rights. While Busche did not succeed on all issues or against all defendants, it is significant that the existence and extent of Busche's injuries and the wilfulness of Burkee's illegal conduct were the major issues at trial.

Busche also argues that the district court should have applied the rule announced in *Hughes v. Repko*, 578 F.2d 483 (3rd Cir. 1978), which allows a prevailing party to recover fees only to the extent he is found to have prevailed in the suit. Under this rule, the prevailing party bears the burden of demonstrating to the district court the number of hours attributable to the prosecution of his successful claims. This calculation presumably includes time spent on unsuccessful claims to the extent such time would have been spent in connection with the successful claims even if the unsuccessful claims had not been brought. *See id.* at 487.

■ The district court did not adopt this formula, applying instead the following

holding found in *Northcross v. Board of Education of Memphis*, 611 F.2d 624, 636, 6th Cir. 1979, *cert. denied*, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980):

> The question as to whether the plaintiffs have prevailed is a preliminary determination, necessary before the statute comes into play at all. Once that issue is determined in the plaintiffs' favor, they are entitled to recover attorneys' fees for 'all time reasonably spent on a matter.' The fact that some of that time was spent in pursuing issues on [sic] research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation unless the positions asserted are in bad faith.

Although the rule announced in *Northcross* may have considerable merit, it seems at odds with the formulation adopted by this court in *Muscare v. Quinn*, 614 F.2d 577, 578–79 (7th Cir. 1980), which held, in part on the authority of *Hughes*, that attorney's fees should be awarded under § 1988 only for preparation and presentation of the claims on which a plaintiff is determined to have prevailed. *See also Nadeau v. Helgemoe*, 581 F.2d at 279 ("the amount of attorney's fees [prevailing plaintiffs] receive should be based on the work performed on the issues in which they were successful.").

From our review of the record, it appears that plaintiff may well be able to establish that he requested fees only for services that were reasonably related to the recovery of damages for injuries flowing from Busche's unlawful termination. However, because the district court awarded fees under a

legal standard implicitly rejected by this court in *Muscare*, we believe it is necessary to allow the district court to reconsider its award in light of that opinion, which was published one day after the district court issued its final decision in this case.[15]

### D. Costs

 Fed.R.Civ.P. 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court directs otherwise." Since the district court properly determined that Busche was the prevailing party in this action, it did not err in awarding costs to Busche.

### IV.

For the foregoing reasons,[16] the decision of the district court is affirmed, except for the attorney's fee award, which is remanded to the district court for further proceedings consistent with this opinion. Defendant will bear the costs of this appeal.

---

**15.** Burkee also requests that he be afforded a hearing on remand of the attorney's fees computation. In *Murphy v. Kolovitz*, at 663, this court noted that the district court may, in its discretion, request written briefing in lieu of a hearing on the determination of appropriate attorney's fees. Of course, whether or not a hearing is held, Burkee must be allowed sufficient opportunity to contest plaintiff's fee re-

quest. *Cf. Konczak v. Tyrrell*, 603 F.2d 13, 19 (7th Cir. 1979) ("Considering the depth of the briefing, a hearing on attorney's fees was unnecessary.").

**16.** Matters not discussed in this opinion have nevertheless been duly considered. We have found them to be insufficiently important or meritorious to warrant discussion.