Elizabeth DUGAS

v.

JEFFERSON COUNTY et al.

No. 1:95–CV–437.

United States District Court,
E.D. Texas,
Beaumont Division.

June 21, 1996.

Patricia A. Stone, Stone & Stone, Beaumont, TX, Donald E. Sample, Sample and Sample, Beaumont, TX, for Elizabeth Dugas.

John G. Bissell, Strong Pipkin Nelson & Bissell, Beaumont, TX, for Carl R. Griffith, Eric R. Payne, Jefferson County, Texas.

### MEMORANDUM ORDER OVERRULING DEFENDANT'S OBJECTIONS AND ADOPTING THE REPORT OF THE UNITED STATES MAGISTRATE JUDGE

HEARTFIELD, District Judge.

This is a civil rights action involving the strip search of a female state misdemeanor defendant at the Jefferson County Jail. Defendants Jefferson County and Eric Payne, the sheriff's deputy who ordered the strip search, admit that the search violated plaintiff's Fourth Amendment right to be free from unreasonable search and seizure.

On May 28, 1996 United States Magistrate Judge Earl S. Hines entered a report recommending that defendant Eric Payne's motion for summary judgment be denied. Defendant Payne thereafter timely filed objections to the magistrate judge's report.

### I. Objections

#### A. City of St. Louis v. Praprotnik

Relying chiefly on *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988), defendant Payne argues that if a municipal policy results in the deprivation of an individual's constitutional rights, then the act of a nonpolicymaker cannot also be considered a cause of the deprivation. Defendant relies on the following extract from *Praprotnik* in making this argument: "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality."

Defendant both misreads and takes out of context this passage. The two sentences which follow the quoted extract in the opinion place it in context: "Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." 485 U.S. at 127, 108 S.Ct. at 926.

Thus *Praprotnik* deals with the question of whether a nonpolicymaking official's acts which are *not pursuant to a policy* may be *attributable to the municipality* for § 1983 purposes. There can be no logical extension from this premise to the issue of whether the acts of a nonpolicymaking official which are *pursuant to an unconstitutional policy* may serve as the basis for § 1983 liability *against the individual.* The *Praprotnik* case is simply not on point.

#### B. "Same Causal Chain"

In the next portion of his objections, defendant Payne agrees as a general proposition that two or more causes may combine together to produce an injury. The magistrate judge's report cited an 11th Circuit case to this effect. In *Williams v. Bennett*, 689 F.2d 1370 (11th Cir.1982), an inmate who had been stabbed by another inmate was allowed to argue that both the inmate who actually committed the stabbing and the various prison officials who ignored an order in an earlier class action case involving the prison system

by not assigning guards to a particular location could jointly be held liable for the harm.

Defendant Payne seeks to distinguish *Williams* from this case by arguing that the county's policy and his act of ordering the strip search are not "sufficiently independent" of one another but are instead "part of the same causal chain." No authority is cited for the proposition that in order for there to be multiple causes of an injury, the acts may not be closely related, and the court has been unable to locate support for such a proposition. In fact, such a proposition appears at odds with several of the cases cited in section I.C., *infra.*

## C. *Busche v. Burkee*

The magistrate judge's report cited *Little v. Barreme,* 6 U.S. (2 Cranch) 170, 2 L.Ed. 243 (1804), for the proposition that public officers are not shielded from civil liability for illegal acts simply because they act upon direction of a policy-making superior. In *Busche v. Burkee,* 649 F.2d 509 (7th Cir. 1981), the Seventh Circuit suggested that an exception to this general rule is appropriate in some instances. Defendant asserts that this case falls within the exception.

In *Busche v. Burkee,* Bosman, a police chief, upon order of the mayor, terminated an officer without a pretermination hearing. "Busche [plaintiff police officer] ... challenges the dismissal of Bosman [police chief] from this action. The district court found that Bosman 'acted merely as an agent of ... Burkee in terminating the plaintiff from employment on August 12, 1974, and is therefore not liable for violation of plaintiff's rights.' *We reject this broad conclusion to the extent that it may imply that an individual is relieved of personal responsibility for perpetrating unlawful acts against another simply because he is acting as an agent or subject to a superior's orders." Id.* at 517 (emphasis added). Nevertheless, under the factual particulars of the case, the Seventh Circuit deemed that an exception to *Little v. Barreme,* 6 U.S. (2 Cranch) 170, 2 L.Ed. 243 (1804), was warranted. The court relied on several factors in choosing to depart from the general rule in *Little v. Barreme:* (1) the police chief had acted within the normal range of activities of a police chief (i.e., he made a termination decision; he did not, for example, "order corporal punishment or incarceration"); (2) he signed the letter of termination only after twice being ordered to do so by the mayor; (3) prior to signing the termination letter after he advised the mayor of his belief that the proposed termination was unlawful; (4) by law, when the police chief believed an order of the mayor, the head of the police department, was illegal, the police chief was required to inform the mayor of his belief of illegality but then to carry out the order.

While Payne did act within the normal range of activities of a jailer, the most crucial distinction from *Busche* is that Payne at no time expressed an opinion that the search might be unlawful. Thus, no departure from *Little* is warranted.

In short, *Busche* reiterated and reinforced the general rule of *Little,* while creating a narrow exception. The facts of this case do not appear to fall within the spirit of the *Busche* exception. Further, the creation of an exception in *Busche* appears to be against the weight of authority. *See Bates v. Clark,* 95 U.S. (5 Otto) 204, 24 L.Ed. 471 (1877) ("It is a sufficient answer to the plea, that the defendants were subordinate officers acting under orders of a superior, to say that ... military officers can no more protect themselves than civilians in times of peace by orders emanating from a source which is itself without authority. The authority of the commandant of the post in the case was precisely the same as the Indian agent or sub-agent, or superintendent; and it will hardly be maintained that if either of them, wholly mistaking their powers, had seized the goods, he would have incurred no-liability. So the plea that they had good reason to believe that this was Indian country, and that they acted in good faith, while it might excuse these officers from punitory damages, is no defence to the action."); *Benter v. Peck,* 825 F.Supp. 1411 (S.D.Iowa 1993) ("Dr. Peck's contention that the prison's policy afforded him no discretion, even if true, would not absolve Dr. Peck of liability. Fundamental principles of fairness embodied in the Constitution require that government offi-

cials, both state and federal, be held liable for damages when they violate limits placed upon their conduct by the constitution, even when acting pursuant to Congressional authorization."); *Benford v. American Broadcasting Cos.*, 554 F.Supp. 145 (D.Md.1982) ("To make out a defense that he acted within the outer perimeter of his scope of authority, an official must show his authorization was founded in the law. However, it is not enough that an official's immediate supervisor approved his actions when the supervisor himself lacked authority to sanction the unlawful event. . . . This rule makes commonly good sense. One can imagine the consequences were a high ranking official permitted to act as a 'straw man' who could broaden the scope of his own authority simply by ordering his subordinates to carry out those tasks he is not permitted to accomplish personally.") [1]; *Moody v. Proctor*, 986 F.2d 239, 242 (8th Cir.1993) (Arnold, J., dissenting) ("A person may not plead the defense of superior orders to avoid liability for an act otherwise tortious. If an order, or an invariable practice, is unconstitutional, acting in accordance with it is actionable under 42 U.S.C. § 1983.").

## II. Conclusion

For the foregoing reasons, it is **ORDERED** that defendant Eric Payne's objections to the report and recommendation of the United States Magistrate Judge dated May 28, 1996 are **OVERRULED** and the report is **ADOPTED**. Defendant Payne's motion for summary judgment is **DENIED**.

## *REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE RE: DEFENDANT ERIC PAYNE'S MOTION FOR SUMMARY JUDGMENT*

HINES, United States Magistrate Judge.

Pending is defendant Eric Payne's January 16, 1996 motion for summary judgment, to which a response and a reply were filed on March 25, 1996 and March 28, 1996, respectively. The motion was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for issuance of a report recommending disposition by referral order of United States District Judge Thad Heartfield dated January 23, 1996.

### I. Background

Plaintiff Elizabeth Dugas brings suit against Jefferson County, Jefferson County Sheriff Carl Griffith in his official capacity, and Sheriff's Deputy Eric Payne. Defendant Payne was assigned to the Jefferson County Jail at the time of the events in question.

On the morning of August 14, 1993, plaintiff voluntarily turned herself in at the Jefferson County Jail on an arrest warrant for making harassing telephone calls, a misdemeanor. She was fingerprinted and photographed, and she posted a $75 bond. She was asked not to leave until the time of her court appearance could be determined. She was not placed in a holding cell, handcuffed, or in any other manner restrained.

While awaiting notification of her court date, plaintiff was retrieved by two female employees of the jail and subjected to a strip search. Defendant Eric Payne, acting in accordance with a sheriff's policy which he interpreted to require strip searches for all persons entering the jail (including those not being detained), had ordered the strip search. Jefferson County, in its response to plaintiff's separate motion for summary judgment, now admits that under controlling Fifth Circuit law the search of plaintiff was unconstitutional.

### II. The Motion and Response

Defendant's motion and reply assert three basic defenses. First, Payne contends that in ordering the strip search he was acting pursuant to a written jail policy which required searches of all arrestees without regard to whether detention was contemplated and irrespective of the severity of the charged offense or the presence or absence of a reason to believe the arrestee was concealing weapons and/or contraband. He claims that he exercised no real discretion in

---

**1.** Defendant correctly points out that this motivation for the *Little v. Barreme* rule is not present in this case, as "the party ordering the conduct, Jefferson County, has already admitted that it was their [sic] policy which caused the strip search."

ordering the search and "was simply following orders." Eric R. Payne's Motion for Summary Judgment at 2.

Payne next argues that his actions cannot be considered "the" cause of any harm that plaintiff may have suffered, as she would not have been injured were the county policy not in existence. Payne argues that since the county has already admitted that its search procedures were unconstitutional, he cannot be simultaneously held liable for violation of plaintiff's rights.

Alternatively, Payne argues that his actions did involve the exercise of discretion but seeks the protection of the doctrine of qualified immunity. He claims that his actions met the test of objective legal reasonableness assessed in light of the legal rules established at the time of those actions.

Plaintiff responds that county liability does not preclude liability on Payne's part as well. The main focus of plaintiff's response is on the merits of Payne's asserted qualified immunity defense. Plaintiff alleges that by August 1993 the unconstitutionality of subjecting a minor offender for whom there did not exist reasonable suspicion to believe that a weapon or contraband was being carried was clearly established in the Fifth Circuit as well as in every other circuit which had considered the issue.

### III.   Discussion and Analysis

Jefferson County, a co-defendant and Deputy Payne's employer, concedes that its strip search policy was unconstitutional. Deputy Payne, represented by the same legal counsel, does not argue to the contrary. Under these circumstances, the court assumes Deputy Payne concurs—or at least does not contest—that the strip search he ordered violated plaintiff's Fourth Amendment rights. Therefore, the sole issues for consideration in Deputy Payne's motion are: (1) whether as a matter of law he cannot be liable for follow-

ing official policy; (2) whether as a matter of law his conduct cannot be considered the proximate cause of the constitutional violation; and (3) whether, alternatively, he is protected from liability and suit under the doctrine of qualified immunity.

### A.   Following Orders

Deputy Payne first argues he cannot be held liable for harms occasioned by his conduct, as he merely followed official policy.[1] This contention has substantial sympathetic appeal given realities of employment in a jail setting. Implicit obedience of subordinates to policies and orders of superiors is indispensable to the safe, efficient functioning of a penal institution.[2] Initially, it seems harsh to impose liability on those whose general duty is to obey. While policy could not give a right to perform an unlawful act, it might excuse a subordinate actor from damages. Thus, the claim of the injured party would persist only against the government or entity from which the policy emanated.

■ Deputy Payne cites no authority for this rule of law, and the court's independent research fails to disclose any. To the contrary, it appears long established that public officers are not shielded from civil liability for illegal acts simply because they act upon direction of policy-making superiors. *See Little v. Barreme*, 6 U.S. (2 Cranch) 170, 2 L.Ed. 243 (1804) (captain of military ship not excused from civil liability for wrongful seizure of Danish vessel pursuant to orders of President of United States). Chief Justice Marshall in *Little v. Barreme* considered the seeming inequity of imposing liability on the subordinate who merely followed orders. Ultimately, however, he rejected the idea that following orders, even "with pure intention," is reason to excuse the actor from damages:

---

1. Plaintiff disputes this characterization of Payne's conduct. Plaintiff argues Payne had the power and discretion to determine the type of search, and certain portions of the Jefferson County Jail Policy Manual tend to support this contention. (Section XI of the manual details procedures for conducting various types of searches.) However, it is unnecessary to resolve

this dispute in that Payne's argument is rejected on other grounds.

2. The court judicially notices that jail and prison staffs are organized in military style. Guards are referred to as "officers." Intermediate supervisory personnel are classified per military rank, e.g., sergeant, lieutenant, captain, major, etc.

But I have been convinced that I was mistaken, and I have receded from this first opinion. I acquiesce in that of my brethren, which is, that the *instructions cannot change the nature of the transaction, or legalize an act which without those instructions would have been a plain trespass.*

*Id.* 6 U.S. at 179 (emphasis supplied); *see also Busche v. Burkee,* 649 F.2d 509, 517 (7th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981); *Benford v. American Broadcasting Cos.,* 554 F.Supp. 145, 154–55 (D.Md.1982).

Chief Justice Marshall did not explain why he acquiesced in the opinion of his brethren, but the reason seems obvious. A contrary rule could lead to abuse, uncertainty, and absurd results. Under a contrary rule, a prison guard could employ physical brutality and inflict serious injury upon orders of a superior yet escape liability. The law cannot so easily countenance such wrongful conduct. In short, the better and more just rule is that absent immunity all whose acts violate the constitution are liable.

Deputy Payne is not entitled to summary judgment on the ground that he merely followed orders.

## B. Causation

Deputy Payne also seeks summary judgment by contending that since the county admits its policy caused the deprivation of plaintiff's rights, his conduct cannot also be considered cause of the deprivation. Essentially, this is the same argument rejected in the preceding section. Even when disguised in causation clothing, however, it does not withstand analysis.

Deputy Payne argues correctly that the legal causation element of a cause of action under Section 1983 is "proximate cause". He also asserts accurately that legal cause has a cause-in-fact component.[3] However, it is axiomatic that there can be more than one legal cause of an event. *See, e.g., VanBuskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 492 (3d Cir.1985).

Here, there can be no real doubt that Deputy Payne's order that plaintiff be strip searched played a substantial part in bringing about the constitutional violation and can be considered a legal cause. To be sure, Jefferson County's deficient policy also meets the causation definition, but that does not mean, *a fortiori,* that Deputy Payne's conduct did not. The independent acts of two separate defendants may combine to produce injury. *See, e.g., Williams v. Bennett,* 689 F.2d 1370, 1389 (11th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).

Finally, to the extent Deputy Payne rests his causation argument on the fact that he did not personally conduct the strip search of plaintiff, the motion for summary judgment is again without merit:

A person "subjects" another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an affirmative act which he is legally required to do, that causes the deprivation of which complaint is made. Moreover, personal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be es-

---

**3.** The concept of legal cause comprehends the distinct elements of cause in fact and foreseeability. *See, e.g., Nettles v. Griffith,* 883 F.Supp. 136, 145 (E.D.Tex.1995). The standard causation charge read to juries in 42 U.S.C. § 1983 unlawful search cases in this circuit reads as follows:

The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the defendant was a cause-in-fact of the damage plaintiff suffered. An act or failure to act is a cause-in-fact of an injury or damages if it appears from the evidence that the act or omission played a substantial part in bringing about or actually causing the injury or damages. The plaintiff must also prove by a preponderance of the evidence that the act or failure to act by the defendant was a proximate cause of the damage plaintiff suffered. An act or omission is a proximate cause of the plaintiff's injuries or damages if it appears from the evidence that the injury or damage was a reasonably foreseeable consequence of the act or omission.

U.S. Fifth Circuit District Judges Ass'n, Pattern Jury Instructions (Civil Cases) 112 (1995).

tablished not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict constitutional injury.

*Soto v. City of Sacramento,* 567 F.Supp. 662, 673–74 (E.D.Cal.1983) (citations omitted), *quoted in Springer v. Seaman,* 821 F.2d 871, 879 (1st Cir.1987).

Deputy Payne is not entitled to summary judgment on the ground that as a matter of law his conduct cannot be considered a legal cause of the constitutional deprivation.

## C. Qualified Immunity

Accepting as true Deputy Payne's allegations that he ordered the strip search in good faith compliance with county policy and without knowledge that the policy was constitutionally infirm, he might be shielded from liability under the doctrine of qualified immunity.[4]

### 1. Underlying Policy and Principles of Analysis

■The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Immunity in this sense means immunity from suit, not merely from liability. *Jackson v. City of Beaumont,* 958 F.2d 616, 620 (5th Cir.1992).

In essence, qualified immunity "reconcile[s] two competing interests. One interest is the compensation of persons whose federally protected rights have been violated. Opposing this is the fear that personal liability will inhibit public officials in the discharge of their duties." *Johnston v. City of Houston,* 14 F.3d 1056, 1059 (5th Cir.1994). In balancing these interests, it is inevitable that some improper actions are shielded.

■ When considering a claim of qualified immunity, courts engage in a bifurcated analysis. First, it must be determined whether the plaintiff has alleged the violation of a constitutional right. *Rankin v. Klevenhagen,* 5 F.3d 103, 105 (5th Cir.1993). If so, it must be determined whether the defendant's conduct was objectively reasonable, because even if an official's conduct violates a constitutional right, that official is entitled to qualified immunity if the conduct was objectively reasonable. *Id.* (citing *Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir.1993)).

■ An official is subject to liability if the right was clearly established at the time of the action in question. *Mouille v. City of Live Oak,* 918 F.2d 548 (5th Cir.1990). A right is clearly established only when its contours are sufficiently clear that a reasonable official would have realized that his conduct violated that right, not simply that the conduct was otherwise improper. *See, e.g., Doe v. Taylor Indep. Sch. Dist.,* 15 F.3d 443, 454–55 (5th Cir.), *cert. denied sub nom. Lankford v. Doe,* — U.S. —, 115 S.Ct. 70, 130 L.Ed.2d 25 (1994).

An official's conduct is not protected by qualified immunity if, in light of preexisting law, it was apparent that the conduct, when undertaken, constituted a violation of the right at issue. This is true even though the very action in question had not then been

---

4. Payne has argued that his actions were purely *ministerial.* The seminal qualified immunity decision, *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), suggests the defense is available only to governmental officials performing *discretionary* functions.

Early cases considered a "ministerial function" exception to the general rule of qualified immunity. Recently, however, several circuit courts have commented on the extremely restricted breadth of the ministerial function exception or expressed doubt as to its continuing vitality altogether. *See, e.g., Coleman v. Frantz,* 754 F.2d 719, 727 (7th Cir.1985); *Gagne v. City of Galveston,* 805 F.2d 558, 559–60 (5th Cir. 1986); *McIntosh v. Weinberger,* 810 F.2d 1411, 1432 (8th Cir.1987), *vacated and remanded on other grounds sub. nom. Turner v. McIntosh,* 487 U.S. 1212, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988); *Horta v. Sullivan,* 4 F.3d 2, 11, 12 (1st Cir.1993); *Sellers By and Through Sellers v. Baer,* 28 F.3d 895, (8th Cir.1994); *Jordan v. Doe,* 38 F.3d 1559, 1565–66 (11th Cir.1994).

For this reason, and because Payne pleads in the alternative, evaluation of the merits of Payne's qualified immunity defense is in order.

held to be a constitutional violation. *See Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "Put another way, officials must observe 'general, well-developed legal principles.'" *Doe,* 15 F.3d at 455 (quoting *Jefferson v. Ysleta Indep. Sch. Dist.,* 817 F.2d 303, 305 (5th Cir.1987)).

### 2. Application

#### a. Constitutional Right

Defendant Jefferson County has admitted that plaintiff's Fourth Amendment rights were violated by the search in question, and defendant Payne apparently does not disagree with this conclusion. Payne's assertion of the qualified immunity defense does not focus on the first prong. Rather, Payne's motion, to the limited extent it argues the defense of qualified immunity, centers on the issue of whether Payne's conduct was objectively reasonable in light of the state of the law at the time of that conduct. "[T]here is no evidence which indicates that Deputy Payne either knew or should have known that the County's policy was unconstitutional." Eric R. Payne's Motion for Summary Judgment at 3.

■ In fact, the county's admission of a constitutional violation was proper. In 1985, the Fifth Circuit held that the Fourth Amendment rights of a person are violated when he or she is subjected to a strip search while awaiting bond on a minor offense and when there is no reasonable suspicion that that person, individually or as a member of a category of offenders, might possess weapons or contraband. *Stewart v. Lubbock County,* 767 F.2d 153, 156–57 (5th Cir.1985); *see also Watt v. City of Richardson Police Dep't,* 849 F.2d 195 (5th Cir.1988).[5]

#### b. Objective Reasonableness

The question then becomes whether Payne's actions were objectively legally reasonable in light of the legal rules that were clearly established at the time. *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038. The Fifth Circuit in *Melear v. Spears,* 862 F.2d 1177 (5th Cir.1989), offered some guidance in going about this inquiry:

> As a general proposition, we will not rigidly define the applicable body of law in determining whether relevant legal rules were clearly established at the time of the conduct at issue. Relying solely on Fifth Circuit and Supreme Court cases, for example, would be excessively formalistic, but they will loom largest in our inquiries. In determining what the relevant law is, then, a court must necessarily exercise some discretion in determining the relevance of particular law under the facts and circumstances of each case, looking at such factors as the overall weight of authority, and the status of the courts that render substantively relevant decisions, as well as the jurisdiction of the courts that render substantively relevant decisions.

*Id.* at 1184 n. 8 (citation omitted).

The strip search in question occurred on August 14, 1993. The Fifth Circuit handed down its rulings in *Stewart* and *Watt* in 1985 and 1988, respectively. Importantly, by 1993 the Fifth Circuit's position on strip searches of minor offenders was unexceptional. On March 23, 1993, the Tenth Circuit handed down its decision in *Chapman v. Nichols,* 989 F.2d 393 (10th Cir.1993). *Chapman* noted the unanimity among the various circuits which by that date had considered the constitutionality of strip searches under circumstances similar to those in the instant case. *Id.* at 395 (listing cases from the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth and Tenth Circuits). Moreover, by the time plaintiff was strip searched, the federal district courts, including those in our own circuit, had begun to cite these cases. *See, e.g., Holton v. Mohon,* 684 F.Supp. 1407 (N.D.Tex.1987).

In addition, by August of 1993, several other circuits had already decided as a matter of law that qualified immunity offered no protection for officials who promulgate policies requiring mandatory searches. *See Chapman v. Nichols,* 989 F.2d 393 (10th Cir.1993) ("The legal issue is whether ... [a

---

[5.] The facts in Elizabeth Dugas' case are even more compelling than those in *Stewart,* as plain-

tiff here had already posted bond and qualified for release when she was subjected to the search.

policy-making sheriff] could have reasonably believed that a strip search policy applied to minor offense detainees without particularized reasonable suspicion was lawful if conducted in private.... [W]e conclude as a matter of law that such a belief is not objectively reasonable."); *see also Walsh v. Franco,* 849 F.2d 66, 68–70 (2d Cir.1988); *Weber v. Dell,* 804 F.2d 796, 803–04 (2d Cir.1986), *cert. denied sub nom. County of Monroe v. Weber,* 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

More directly on point for this case, one circuit had held as a matter of law that a non-policy-making official who orders a strip search of a nonviolent minor offense arrestee pursuant to a county policy requiring the search cannot successfully assert the defense of qualified immunity. *Masters v. Crouch,* 872 F.2d 1248, 1255–57 (6th Cir.), *cert. denied sub nom. Frey v. Masters,* 493 U.S. 977, 110 S.Ct. 503, 107 L.Ed.2d 506 (1989); *cf. Jones v. Edwards,* 770 F.2d 739, 742 & n. 4 (8th Cir.1985) (qualified immunity not available to jail personnel who conducted strip search, although there is no indication in the opinion whether the search was pursuant to a county policy).

As noted, an assertion of the qualified immunity defense fails when the contours of a right are sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039. Based on the above-cited precedents, it is clear that Officer Payne's act of ordering plaintiff's strip search did not comport with general legal principles which were well developed at the time of the order. *Doe,* 15 F.3d at 455; *Jefferson,* 817 F.2d at 305. Therefore, Officer Payne may not successfully avail himself of the qualified immunity defense.

### IV. Recommendation

Defendant Eric Payne's motion for summary judgment should be denied.

### V. Objections

Any party may serve and file specific, written objections to proposed findings of fact, conclusions of law and recommendations of the magistrate judge within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(b), 72(b).

Failure to object as stated above bars (1) entitlement to de novo review by district judge of proposed findings of fact, conclusions of law and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate attack of proposed factual findings and legal conclusions accepted by district judge, except on grounds of plain error, *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415 (5th Cir.1996) (en banc).

Dated May 28, 1996